Council, could you approach the podium and identify yourselves for us, please? Good morning. Al Hofeld, Jr. on behalf of the appellant, Robin Lewis. Good morning. Adam Grant on behalf of the appellee, CitiMortgage, Inc. Very well. Okay, so let's have 15 minutes for each side. And the appellant, if you want to reserve some time for a vote, that would be fine. Thank you. Do you want to do that? Yes, I would. Okay. Five in addition to the 15 is my understanding. Do I have that right? I'm sorry? Five for rebuttal in addition to the 15 for openings. No. Are we just doing 15? Let's have 15 altogether. I see. Okay. Thank you. So we'll give you 12 1⁄2 and 2 1⁄2. Okay. Okay. May it please the Court. This is a case in which the borrower in foreclosure did everything right. A single mom of two children working full-time, she actually appeared and answered CitiMortgage's foreclosure complaint. There's no shame in having trouble making mortgage payments, especially for someone holding two jobs and for somebody who proactively applied for Citi's assistance in accessing a federal program designed to assist those in her position. Counsel, what's our standard of review here? Your Honor, the standard of review with respect to all questions is de novo, except for abuse of discretion for the discovery. Okay, but doesn't the household indicate that it should be abuse of discretion? Yes. However, where for a motion to reconsider raising issues of the misapplication of law, appellant receives de novo review. For a motion to set aside sale, where the court received no testimony, no live testimony below, and ruled entirely based on documentary evidence, the standard is also de novo. But isn't this factually similar to household in terms of the there was no testimony rendered in household as well in the trial level? I believe that's correct, Your Honor, from my recollection. Okay. And do you have any cases that are foreclosure cases where the court held that a motion to vacate the sale was actually reviewed de novo? I don't believe, to the best of my recollection, Your Honor, we don't cite any in our briefs. However, it seems to be a very bright line rule that where there is no testimony received and the court rules entirely based on documentary evidence and affidavits are included as documentary evidence, that the standard is de novo. Okay. Now, these documents are all in the record, the letters going back and forth, right? That is correct, Your Honor. So even though there's not a transcript of the hearing, the letter where they said they've taken it under advisement or whatever words they used for the third application sort of process, is that right? They're in the record? Yes. I'm sorry, the letters are in the record? Was that the question? Yes. Correspondence. Yes, all of the letters that she received are in the record. And also, at the time that the judge denied the motion to vacate? Yes, Your Honor. He didn't give any reasons on the record, did he? At least the order that's in the record on appeal doesn't state the basis upon which he's denying the motion to vacate. That is correct, Your Honor. In fact, I do not believe reasons were given for the denial of the motion to reconsider, the denial of the motion to vacate, the denial of the motion to set aside sale. All right. Counsel, one question with regards to discovery. Are there any orders in the record that was provided to this court with regards to discovery, whether it was granted or denied, the request for discovery? Because you make an issue about discovery. Was there ever an order indicating that your request for discovery was denied? To the best of my recollection, there may be one order, Your Honor. I'm not entirely sure. I know that we, below the defendant specifically requested discovery, with respect to the status of her third HAMP application at the time of sale. That request was denied. It may have just been an oral denial. I just can't recall if it's in an order. The defendant also requested discovery with respect to the lack of notice of sale issue. That request was also denied. The fact is, though, that you were never allowed to take discovery on those issues. That is correct. That is correct. And discovery was crucial under the denial of request for assistance for HAMP, because at that point of the proceedings in the mortgage foreclosure case, discovery is closed. Once there's been a sale, as Your Honor knows, once there's been a sale and there's a motion to confirm the sale, discovery, typical discovery in a foreclosure case has closed. And the only way that the defendant, who bears the burden of proof, of showing, the only way that the defendant can show that in a situation like this, that the HAMP application had not been evaluated by the plaintiff bank at that point in time, is to have some access to the internal records of the bank. Otherwise, the defendant is put in the position where they have the burden of proof, but then they're entirely prevented from obtaining the discovery they need to meet that burden. The information is in the control of the other side. That is absolutely correct. Was this motion to vacate entered after the sale but prior to the confirmation? Was the motion to vacate filed after the sale? And prior to the confirmation. That's what the statute requires under making the home affordable program. The court, it says, well, it says the court shall set aside the sale held pursuant to 15-1507 upon motion of the mortgager at any time prior to the confirmation of the sale if the mortgager approves by a preponderance. Yes, the answer to you, yes. The motion for vacation of the sale was filed after sale and before confirmation. How would you distinguish Bermudez? Bermudez is distinguishable in several ways from the facts of the present case. First, here in Bermudez, there was conflicting evidence. The borrower said, borrowers said that they had submitted documents. Citi filed affidavits saying they had not, that there were incomplete documents. There were letters from Citi identifying missing documentation. Here, the evidence for the borrower is entirely uncontroverted. Here, the borrower filed detailed affidavits, either attaching documents submitted with her applications or listing the various documents that she attached and explaining why it was no longer possible to attach all of the originals she submitted. The documents she attached were authenticated, unlike the case of the borrowers in Bermudez. And the, none of the letters that, I think it's very important that none of the three letters that Citi sent in this case identified any missing documentation whatsoever, including the crucial. Wasn't it insufficient income each time or something? For the first two, yes, for the first two letters. For the third it was. For the third letter, the third letter, the June 27th letter, indicated that the request for assistance had been received and that it was under review and that it would take 30 days to review it. It did not identify any missing documentation whatsoever. In fact, Citi in this case provided no affidavit and no evidence whatsoever to indicate that there was any missing documentation in any of the three HAMP applications submitted by the defendant, including the third one, which was still pending at the time of sale. Counselor, you keep mentioning HAMP, but this application here was actually in reference to an FHA HAMP? That is correct. Okay. That is correct. This was an FHA HAMP. In that respect, this case is also a little bit different from Bermudez. The application requirements for Freddie Mac HAMP, which is what Bermudez dealt with, are a little bit more stringent. There is an affidavit that is required that is not required here. And Citi, in its briefs below and even before this Court, seems to misunderstand that this was an FHA loan, and therefore that FHA HAMP provided the applicable guidelines. Do we have different guidelines in this case as opposed to Bermudez? Yes. That is what I mean to say, Your Honor. Were these three separate applications in this case, or would you say they were like one continuing application? I think they were three separate applications. The first one, the record indicates that the borrower in a phone call with Citi after submitting the first one was advised to reapply. We are talking about this case now? Yes. Okay. I just want to make sure. Yes. She was advised to reapply? She was advised to resubmit the same application that she had submitted the first time. Okay. She did that. And then she submitted a new HAMP application, FHA HAMP application, the third one in May of 2012. The proof attached to her affidavit where she attests that she submitted the third HAMP application also attaches the UPS shipping receipt, unlike the borrowers in Bermudez, who did not attach any proof that the application documents were actually sent. I think Bermudez is also distinct in that here, as I said, the standard of review is de novo. In Bermudez, the court found the abuse of discretion standard applied. In Bermudez, however, and it may have been because the borrowers didn't raise the issue, but the Bermudez court did not consider that where the evidence is purely documentary in nature, the reviewing court reviews de novo. What do you, or how do you respond to the bank's suggestion that you've acknowledged that you didn't attach complete applications to your affidavit in this case? Well, I think that a complete, the application itself was complete. I believe the bank's argument is that certain documents required in support of the application were not all attached to the affidavit. Our response is a couple of points. First of all, she attached some documentation. Second, the documentation she did not attach, she no longer had in its original form, and she explained that in her affidavit. Once she submitted the applications, she disassembled and refiled the original financial documents that she had submitted and didn't have the originals available to her anymore. But her position was that when she did apply, that she did supply all those documents, which if she did do that, they would be in the hands of the bank. That is correct. They would be in the bank's files, which we were prevented from discovering. And she listed all of the documents, each document in her affidavits that she submitted. And once again, I think it's crucial that Citi's June 27th letter reads as though her application for FHA HAMP was complete. It does not identify any missing documents, and Citi provided no evidence whatsoever that any documents were missing. Do not all the letters contain a final paragraph indicating that, you know, particularly the one on the 27th that is being reviewed, but however, the foreclosure proceedings will still continue on? They do. There's no doubt about it. There's no doubt about it. On the other hand, the HAMP statute in the mortgage foreclosure law is very clear that a sale can be set aside where the sale proceeds in material violation of HAMP. So that if the letter says you're under review, it's going to take 30 days to review your application, then the sale cannot proceed at that point. Maybe other parts, depending on the stage of the foreclosure proceeding in other cases, could go forward. But the sale, the statute is crystal clear that the sale cannot proceed if and where HAMP requires evaluation prior to sale. Another question I have is, no one raises this in their briefs, but is a Supreme Court Rule 114 applicable in this case? I believe the Supreme Court rule was not promulgated and did not take effect until after the circuit court's rulings in this case. But it appears the same reason why the Supreme Court saw fit to promulgate Rule 114, we have the same reason why the borrower's affidavit in this case, that she did not receive notice of sale, or that she was not, that her HAMP application was pending at the time of sale, why those claims and the testimony and the documents in support of them should have been taken just a little bit more seriously by the circuit court. All right, Counsel, why don't you go ahead and wrap up. Wrap up. In sum, the borrower did prove by a preponderance of the evidence that she submitted a formal application, several formal applications for assistance pursuant to HAMP. And preponderance is simply more likely than not. She submitted a testimony based on personal knowledge, documents she authenticated, unlike in Bermudez, indicating that she submitted three completed applications. And Citi, in this case, does not address at all the borrower's proof that her home was sold at the moment when her third application for HAMP was still pending in violation of the HAMP guidelines and the HAMP statute and the mortgage foreclosure law. Thank you. Thank you, Counsel. Good morning. May it please the Court. Again, I'm Adam Grant, Dickinson-Wright. I'm here on behalf of the appellee Citi Mortgage. I'd like to begin by addressing the standard of review that was discussed earlier and has been thoroughly briefed. There's a Illinois Supreme Court case that's been referenced already this morning, Household Bank FSB v. Lewis. And that case is controlling in terms of the standard of review here. And that case indicates that the standard of review is abuse of discretion. The case quoted, a court's decision to confirm or reject the judicial sale under the statute, referring to the Illinois mortgage foreclosure law, will not be disturbed absent an abuse of that discretion. That case remains good law, has not been overturned, and specifically addresses the standard of review under foreclosure law cases. The appellate would have the court read into that Lewis decision by the Supreme Court a requirement that there was testimony taken at the trial court level in order to trigger that review. But I would urge the court that the cases that were referenced by the appellate in their brief are not applicable because they do not apply to mortgage foreclosure cases. The Addison v. Fay case, upon which they rely, is an insurance case. And the NAB Bank v. LaSalle case is an unpublished appellate court decision. I think it's worth noting that one of the cases cited by the Supreme Court in Lewis, a case called City Corp Savings of Illinois v. First Chicago Trust, 269 Illinois Appellate 3rd, 293. In that decision, the appellate court references that at the trial stage, one of the parties was, quote, in the courtroom and made a request in the courtroom. And to me, that speaks of a case where there's testimony, but there's no specific request. There is a general rule, though, isn't there, perhaps not specific to foreclosure actions, that holds that when the court decides an issue strictly on documentary evidence with no testimony taken and the court is interpreting a question of law, that then the standard of review is de novo? Yes, but the decision in Lewis by the Supreme Court is specific and addresses the Illinois mortgage foreclosure law, and I would urge that the specific pronouncement by the Supreme Court is abuse of discretion. Well, let's talk about those letters. Will, would you agree with counsel that the court's order denying the motion to vacate the sale doesn't set forth any reasons for the denial? I would agree that that's an accurate statement, but I would also, I think it's worth noting that the Bermudez case upon which City Mortgage is relying, paragraph 50 of a case that was decided by this court has an order that says, matter coming before the court on the motion of Juanita Bermudez and Hector Acevedo to reconsider the court's January 12, 2012, order approving report and sale distribution, confirming sale and order of possession. It is ordered, colon, the motion is denied. This court was satisfied with an order of the circuit court in that case that was not a lengthy reasoned order, and I think that the lack of specificity or details in the court's order makes the lack of hearing or a report or a complete record in this case all the more important. Now, before I get to the preponderance, in Bermudez, wasn't the issue really whether or not an application was even completed? That was the issue in Bermudez. Well, the court speaks to what the term applied for means under the statute, and that was the issue that the court addressed there. And the court states in Bermudez that applied for means a borrower must submit documentation required and verify the income, and I think the record in this case indicates that, to the best we can do with the limited record, that that was not done. The first application has a fax cover sheet that has a checklist on it that has boxes that are clearly not checked. What about the last letter? Why don't you tell us how that doesn't indicate that there was a complete application pending, it was under review, and it would take approximately 30 minutes for the application to be considered, and no counter affidavit filed by city? I don't think that, I think we're, in some respect, we're looking at that 30 days as a, the letter doesn't indicate that it will take 30 days. I think the letter indicates that it could take up to 30 days. Well, then if it was denied before the sale, or if it was denied rather before the confirmation of the sale, why didn't the city provide some sort of a contrary, some counter affidavit rather, saying that this has already been denied? Then we'd have a record of it. I don't know that it's, that there's a burden on city to provide that affidavit. Well, wasn't this confirmation of sale, isn't it generally based on a motion for summary judgment of foreclosure and sale, and the sale takes place later, but it's really akin to a summary judgment motion? Yes. When the court granted the sale, granted an order of sale, then it proceeds to sale, then the court is called upon to either confirm or not confirm, and usually, you know, well, the statute has the grounds under which a court would not confirm a sale, but since it is a summary judgment motion in its essence, when the non-movement produces affidavits, then there is a shift so that the movement, that is, city, would have to come back with a counter affidavit. Otherwise, those affidavits are taken as true. Well, I think it's important to note, and again I go back to the Bermudez case decided by this court, that affidavits containing conclusory statements, such as the one submitted by the borrower in this case. Well, what about the letter, though? Let's go back to the letter. Once she says, they sent me this letter, it's dated June 27th, I believe, then Citibank should come back and say, well, it didn't take us 30 days to deny this, we denied it, and here's confirmation. If Citibank denied this, that's all well and good, but we don't know that on this record. The letter doesn't indicate that City Mortgage received a completed application. No, but on a summary judgment, we can infer all reasonable inferences from facts, and Citibank says to her in their letter that they're reviewing the application, don't they? It indicates that it has been forwarded for review, yes. Well, I guess my question is, again, how is that contradicted in any way on this record? It's contradicted based on the briefing that was submitted at the trial court level that indicates that the borrower hadn't established and hadn't submitted a completed application, hadn't established what she had. There's been nothing to indicate that City acted in confirmation. Let's take the two earlier letters. The two earlier letters indicate that we're not going to grant the request or the application because there's insufficient income. Doesn't that suggest that the application was submitted and that the problem was you don't have enough income to justify this forbearance or this camp program, rather? Isn't that an indication that she had indeed applied, but that there was a problem with the income? I think it's an indication there was a problem with the income. I don't know that it necessarily suggests that there was a completed application that was submitted. All right. But doesn't the record indicate that she did submit some information regarding her income after the first two letters when she was rejected? The borrower contends that the information was submitted. The affidavits the borrower submitted, instead of showing the documents and the completed application or the purportedly completed application, only attached a facsimile cover sheet that doesn't indicate what the information was and a UPS confirmation. It's the record at pages 678 and 680 that don't give you any indication looking at it. Can we infer from the record since she provides the income and then she gets a third letter, the following letter, after she submits the income, indicating that they're going to review her application? Greg? Can we infer from the record that she complied with whatever request they were looking for with regards to compliance? I don't know that that's necessarily a fair inference without a transcript or without a complete affidavit. I'm just talking from the documents that are provided to this court. I don't know that I would necessarily be comfortable making that leap without seeing the documents. Does it matter that the FHA HAMP standards are different than those in Citi v. Bermudez? No, it doesn't. Why not? Because the standards may be different, but the statute that we're dealing with here is identical. It's the Illinois Mortgage Foreclosure Law. It's Section 1508, subsection D5. That is the standard that we're looking to here and that has been raised by the appellant. I think what Justice McBride is getting at is in terms of the guidelines. We have different guidelines applicable in Bermudez as opposed to the guidelines that are applicable in this case because we're dealing with a FHA HAMP. We do have different guidelines for the two programs in the two cases, but the statute that we're looking to is the exact same in both cases and deals with whether or not there's been a sale and material violation of the applicable guidelines. Well, let's look at the statute. Counselor indicates that they didn't get an opportunity to have a hearing here. Therefore, they weren't able to provide by preponderance of the evidence pursuant to the statute whether or not the motion should have been granted. I think counsel, you know, they're asking for discovery or evidentiary hearing and that's within the discretion of the court who was, you know, intimately familiar with this case and decided based on its sound judgment and review that there was no additional evidentiary hearing needed. I think that's well established in Illinois law that that's all within the courts. The extent of the hearing is left in the broad discretion of the court but that's a decision by this case that Deutsche Bank v. Berkeley, a decision by this court that indicates that that's all very, you know, well within the court's discretion and there's been. I think we're, I think we could agree with you that there's a good deal amount of discretion involved, but at the same time an evidentiary hearing wouldn't really change much here in terms of having the parties have an opportunity to have this fully explored, whether or not she did have an application in, whether she submitted all the documents that were required. Most of those documents that appears are in the hands of Citibank, the city mortgage railer. So, I mean, I don't see how an evidentiary hearing really harms either side, but it does, to use a common phrase, give a little transparency to what actually occurred as far as her application process. And if she in fact didn't present all this, I think city mortgage would clearly be able to show that. And that's with the idea that nothing needs to necessarily be naked, but if there were an evidentiary hearing, some limited discovery, this could be perhaps resolved one way or the other so that, you know. My only response to that is that the trial court in its discretion may not have been or clearly was not satisfied that that. And I agree, but here's the problem with that. There are a number of cases out there that encourage trial judges to indicate in their rulings. Sometimes there won't be court reporters. Sometimes there aren't proceedings to record. So there are other numerous cases that encourage judges to include in their orders a statement of why they're doing what they're doing so that we can review it at this level and know whether the court abused its discretion or not. If the order simply says motion to vacate the sale is denied, we don't have anything to look at. We don't have a basis upon which to say the court didn't abuse its discretion. And in this case, the order doesn't really tell us. It's simply denied. I'd like to respond to that with just two points. Of course, Mr. Graham. The first is that the language of the order and the lack of explanation of the order is not fatal and was upheld as fine in Bermuda. And I think the other point that's worth noting that's been briefed thoroughly but hasn't been discussed here is that the burden is on the appellant to provide a record, and the appellant was well aware that there was no court reporter in the court and that there was no transcript of the hearing, which is fine, but there's still an opportunity to present a bystander report and attach that as part of the record. That was something that the appellant did not avail themself of, and I think that's a burden to the extent that there's a gap in the record, then that's on the appellant and not on city mortgage. Counsel, I have a question regarding going back to the statute, 1508D5. How is this case different from City Mortgage v. Johnson where factually it was the same situation where the defendant files a motion to vacate and in that case the court found that city mortgage, by proceeding to the sale, materially violated the statute? Aren't these cases similar? I believe that this case is most similar to Bermuda's, in which case the timeline appears to be similar to this case and that the factual, even though we're dealing with two different programs, we're dealing with the same statute. Well, then we're dealing with the same statute in City Mortgage v. Johnson. I'm dealing with 1508D5. Was Johnson cited in the opening brief? I believe it was, yes. Did you respond in your? Let me just flip through my brief. If I have my appellant's brief at my counsel table, I'll grab that momentarily. Yeah, it was on page 3 of the authority.  It's definitely under, it's on page 18 of the opening brief. And I think that the best way to distinguish those two cases is that in Johnson, it appears that the court was satisfied that there was a, that the applied for language had been met, that the language that this court parsed out in Bermuda is that all the material, it was not just a letter, it was not partial, it was a complete application was submitted. And in this case, as is clear from the record, the trial court wasn't satisfied that a complete application, the applied for language in the statute was triggered. And that's how those two cases are different from one another. So unless this court has any additional questions, I'd urge the court to adopt an abusive discretion standard based on Household Bank v. Lewis and to find that based on Bermuda as there's been no showing by the appellant that satisfies the applied for language in the statute and to affirm the trial court's decision. Thank you. Thank you. Mr. Holtfeld, how do you respond to Mr. Grant's argument that you could have provided this court with multiple things if there weren't a transcript, if the proceedings were not recorded? You could have provided us with a bystander's report or an agreed statement of facts that you and Mr. Grant could have entered into so that we'd have some insight into the court's decision. Your Honor, my short answer is that it wasn't required. It's not required for this court's review because no oral testimony was taken by the court. The entire record below is contained within the common law record. In compliance with Supreme Court Rule 321, Ms. Lewis provided the entire common law record on appeal and supplemented it when we discovered that there were some orders and papers missing. All of the court's findings of fact and rulings were based solely on the contents of the papers filed. No live testimony was taken, and that's certainly not uncommon in a mortgage foreclosure case. But normally, let's say there was a transcription, and if the transcription isn't supplied, we would presume under vouch that the court entered an order according to the facts in the law. And the rules also allow for a bystander's report or an agreed statement of facts, something that would give us an indication of how the court reasoned when it denied the motion. It would give us perhaps some insight into whether or not, Now counsel's arguing abuse of discretion. You're suggesting de novo. That's something we'll have to decide, but the foreclosure cases clearly suggest that the standard of review is abuse of discretion, which is a much more difficult standard for you to convince us to reject. So in light of that, have we had some information regarding the court's reasoning? It would certainly make our review a little easier. I understand. The court's rulings were, to a large degree, based on what evidence was presented. And all of that evidence is contained in the common law record that's now before this court. This court has before it the entire record containing all the operative facts. There was no trial. There was no hearing. Everything was done according to the documents. Well, just with regard to the documents alone then, what specifically in the documents establishes that you've met your burden, that a completed application was submitted? As I indicated earlier, the borrower submitted a file, two detailed affidavits attached to which were application documents that she submitted, identification of specific documents that she submitted that were not attached to the affidavits, the facts confirmation. This is crucial with respect to the second application. Attached to her affidavit is the facts confirmation of 23 pages going to the facts number that Citi provided, the UPS shipping receipt for the third application she submitted. The letters, the three letters that she, the three applications and three letters of response from Citi, none of those letters identify any missing documentation whatsoever. Well, but doesn't the third letter say, correct me if I'm wrong, doesn't the third letter say that we may be asking you for additional information? It does, but it doesn't say, what it doesn't say is that the information or documents you've submitted are incomplete. I think that's a critical distinction when it comes to HAMP applications. A borrower can submit a complete HAMP application that includes all of the documents that are required by the standard HAMP application, and then if there's a special situation, the bank servicer may request additional information or documents. But that doesn't mean that the original application was incomplete. So what is it that you want to do at this evidentiary hearing? Well, Your Honor, prior to the evidentiary hearing, we'd like to have a brief opportunity for reasonable discovery to find out exactly what the status of the application, the HAMP application, the third HAMP application that was submitted was on the date of sale. We would like to know whether or not a decision had been made on that application, whether it was a rejection or an approval. We would like to know what point in the review it was. Obviously, if there had been a decision on the application, a final decision, we'd like to know what the date is relative to the sale date. That would help us determine whether or not the application was still pending at the time of sale. And I think that to find out those facts, we need some of the internal documents of CITI. So whatever documents they use to review and analyze FHA HAMP applications, we need to see those internal documents. I don't know whether or not a deposition will be necessary. It could be. It depends on the documents we get in response if we get the opportunity for discovery. I also have a question. Procedurally, you filed a motion to set aside, correct? Yes. And then you filed a memorandum in support of that motion to set aside. Yes. And then the court set the matter down for a hearing. Yes. And then after the court denied your request, then there was a motion to reconsider. Yes. And then that was denied. Yes. And in that process, did CITI Bank ever submit any documentation indicating that her request, her client's request, was denied in conjunction with the letter on the 27th of, I believe it was June? The answer is no. There was no, she never received any response. CITI never provided any evidence of a decision on the application that's referenced in the June 27th letter. It just went into a black hole. Anything else, counsel? I can wrap up, if I may, just a moment. The discovery rulings are certainly within the broad discretion of the circuit court below. But in the circumstances of this case, I don't think that it was reasonable. I don't think it was reasonable for the court to deny the borrower the opportunity for some limited, reasonable discovery in the situation where she had the burden of proof under the HAMP statute to prove by a preponderance of evidence that she requested assistance and that the property was sold in material violation of HAMP. She had that burden of proof, and yet when she requested the discovery, she didn't get it. And the only way she could possibly have proven by a preponderance is that she, is if she had been given the opportunity to determine what the status of the application and evaluation at CITI internally was on the day of sale. She didn't get that opportunity. So I don't think it was reasonable for the court to deny the borrower that discovery. Finally, it was the third letter. You'll note the June 27th letter that CITI sent. It does not specifically reference a FHA HAMP application as having been submitted. It references, I think it's request for foreclosure prevention, your request for foreclosure prevention assistance or prevention program. But in the circumstances, it is crystal clear that it refers to the third HAMP application that she attests she submitted. She only ever submitted applications for FHA HAMP. She never submitted any other request for any other type of assistance under the FHA program. She only submitted the three HAMP applications. And so the CITI's response in that June 27th letter to her third HAMP application. But one thing that definitely isn't in the record, you would agree, is a copy of her application, any of them. Is that right? Not entirely, Your Honor. The applications themselves with the handwritten applications themselves, with the financial statements, assets, and budget, and many of the signed disclosures, those are in the record. They are attached to her affidavits. There are, Your Honor is partially correct, there are documents like tax returns, pay stubs that she was required to submit that she did not attach, as I said, because she no longer had them in the form in which she had submitted them to CITI. Okay. So in addition to the three letters that are in the record, we also have the application minus some missing documents. And then David explaining their absence. Yes. All right. I think I have one further point if I may be allowed. The third application, this is my final point. The first two hand applications that she submitted were denied. We have the letters from CITI. When she submitted the third application, she submitted two additional pieces of income verification that she did not submit with the first two applications. She submitted, this is attached to her affidavit, you'll see this. She attached a verification of employment. She submitted a verification of employment to CITI and she submitted additional documentation of her child support income. Those documents or at least one of them are attached to one or both of her affidavits. It may account for the difference in CITI's response to her third application where instead of denying her for lack of income, they said that you're under review. It will take 30 days to review. They didn't say anything was missing. They didn't deny her for lack of income. That was the only difference when she submitted the third FHA Hemp application is she submitted those additional income documentation. And for the remainder of our arguments, we'll stand on our briefs, and I thank the Court very much for its time. Thank you. Thank you, Counsel. The Court appreciates the presentations today, both orally and in writing, and we will take this very interesting case under advisement. Thank you very much. Thank you.